IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERNATIONAL PAINTERS AND ALLIED ) <br> TRADES INDUSTRY PENSION FUND ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> COMMERCIAL INTERIOR DESIGN, INC. ) <br> a/k/a Commercial Interior Designs, Inc. ) <br> ) <br> Defendant. ) | CIVIL ACTION NO. <br> 06-1068 (RBW) |

## DECLARATION OF THOMAS MONTEMORE

THOMAS MONTEMORE states and declares the following:

1.  My name is Thomas C. Montemore and I am the Assistant to the Fund Administrator of the International Painters and Allied Trades Union and Industry Pension Fund ("Pension Fund", "Fund" or "Plaintiff"). I have held that position since February 1, 2000. I served as Delinquency Controller from 1988 through October 31, 2000 and I have served as the Delinquency Coordinator from 1986 to 1988, and before that, acted as Agreement Clerk from 1982 to 1986, and File Clerk beginning in 1979.

2.  The Pension Fund is an "employee benefit pension plan" as defined in Section 3(2)(A)(i) of ERISA, as amended, 29 U.S.C. §1002(A)(i), established by the International Brotherhood of Painters and Allied Trades, AFL-CIO-CFL ("Brotherhood"), and employers in private industry whose employees are members of or otherwise represented by the Brotherhood and its district councils and local unions, for the purpose of providing retirement income to the



employees. The Pension Fund is administered in the District of Columbia from its and my principal place of business at 1750 New York Avenue, N.W., Washington, D.C. 20006.

3. I have personal knowledge of the contents of the collective bargaining agreements, the Agreement and Declaration of Trust ("Trust Agreement") and the International Painters and Allied Trades Industry Pension Plan ("Plan") referenced in this Motion.

4. The Pension Fund, as part of its normal operating procedure, maintain files containing copies of the collective bargaining agreements signed by each employer and copies of the remittance reports submitted by each contributing employer. The Pension Fund also maintains, as part of its normal operating procedures, a record of all contributions which are paid to the Pension Fund by each contributing employer, including copies of checks submitted directly from employers as payment for contributions due.

5. My review of the regular business records maintained by the Pension Fund reveals that the defendant, Commercial Interior Design, Inc., a/k/a Commercial Interior Designs, Inc. ("Defendant"), is currently a contributing employer of the Pension Fund and is bound to a collective bargaining agreement ("Labor Contract") with the International Brotherhood of Painters and Allied Trades, AFL-CIO, CLC. True and correct copies of relevant provisions of the Labor Contract are attached as Exhibit 2. Under the terms of the Labor Contract, Company is bound to the Trust Agreement and Plan. See, Exhibit 2, Labor Contract, Art. 13.

6. The collective bargaining agreement requires Defendant to submit monthly contributions to the Pension Fund on behalf of all employees in the bargaining unit, and sets forth the rate of contribution and the method for calculating the total amount of contributions due the Pension Fund. Contributions must be made for each hour for which employees receive pay at the contribution rate specified in the agreements. Failure to make the required contributions, or to

submit either incorrect or late remittance reports and contributions, results in a delinquency to the Pension Fund.

7. My review of the records reveals that Defendant has failed to submit the contractually-required contributions to the Pension Fund for work performed pursuant to the collective bargaining agreement. Based upon the remittance reports prepared by Defendant and submitted to Plaintiff for the month November 2005 and the period June 2006 through present, Defendant owes contributions in at least the amount of $24,080.80.

8. Defendant owes interest through October 31, 2006 in the amount of $320.04 on the unpaid pension contributions set forth in ¶8 and on the contributions paid past the due date. The interest has been calculated in accordance with the fluctuating IRS interest rate, as provided at section 10 of the Plan.

9. Section 10 of the Plan parallels the ERISA statute, 29 U.S.C. § 1132(g)(2), and requires the assessment of liquidated damages against Defendant in an amount equal to the greater of the following: the amount of interest owed on the delinquent principal, or twenty percent (20%) of the delinquent principal. As noted above, the total interest owed through October 31, 2006 is $320.04. Twenty percent (20%) of Defendant's unpaid contributions and contributions paid past the due date total $3,897.76. Since the total amount of liquidated damages is greater than the interest amount, Defendant owes $3,897.76 in liquidated damages.

10. § 10.12 of the Pension Fund's rules and regulations parallels the ERISA statute, 29 U.S.C. §1132(g)(2), and allows other legal or equitable relief as the Court deems appropriate. Article VI, § 4 of the Pension Fund's Agreement and Declaration of Trust (attached to the Complaint as Exhibit 1 and incorporated herein by reference) provides for "late charges" in the form of interest on contributions paid more than twenty days after the due date and prior to

litigation. Defendant owes $654.03 in "late charges/interest" as a result of its late payment of contributions each month from August 2005 through November 2005.

11. The Pension Fund routinely audits employers to ensure all required contributions are being paid. It also audits employers in connection with delinquency collection lawsuits. An audit is the most accurate tool employed by the Pension Fund to ensure an employer's compliance with its statutory obligations. In performing these audits, the auditor reviews the payroll records of each employee who performs work of the type covered by the collective bargaining agreement. These records will include time cards, payroll ledgers, payroll summaries, time slips, or such other payroll records as the employer maintains which will indicate the number of hours that each individual employee worked and was paid for each week. The information gathered from these records is then compared to the wage information found on the employer's federal, state and municipal tax returns and on the W-2 statements provided to the employees. The auditor also reviews disbursement ledgers and check registers to identify potential wage payments to employees not made through the payroll system. Job/project contracts are reviewed to determine whether the work performed is within the scope of the collective bargaining agreement. After compiling the information gathered from the above records, a schedule of the contributions that should have been paid according to the contract is prepared. This schedule, which is broken down by month, is then compared to the actual contributions which the employer did submit to the Pension Fund, with any differences noted. Once completed, an audit report is forwarded to the employer for its review and payment.

12. Despite a continuing contractual obligation to do so, Defendant has repeatedly failed to submit timely remittance reports and pension contributions. The Pension Fund and its Trustees are required to pay benefits to all properly eligible employees of contributing

employers. Employees of contributing employers continue to accrue pension credits, based on the hours of their employment, regardless of whether their employers make pension contributions on their behalf for these hours, as contractually required. The Pension Fund's obligation to recognize pension credits and to pay pensions to vested employees is absolute and continues even if the employers fail to pay their required pension contributions. Employer contributions <u>and</u> the earnings the Pension Fund receives by investing these contributions comprise the assets from which the Pension Fund pays retirement benefits to participants and their dependents and beneficiaries. When employers, like Defendant, fail to pay their contributions or do not pay them timely, the Pension Fund is deprived of the investment income they otherwise could have earned. In addition, the Pension Fund also must engage in time-consuming and costly efforts to collect the unpaid contributions. These efforts include letters and phone calls to the employer, investigating other sources for collection and attempting to calculate delinquency amounts and benefit eligibility through other sources (e.g. paystubs), if available. Further, the Pension Fund has to process benefit eligibility and benefit claims manually so that participants (and their dependents) employed by the delinquent employer are not deprived of retirement benefits. The actual losses and added costs (in terms of dollar amount, capital and manpower) incurred by the Pension Fund in connection with an employer contribution delinquency are not capable of precise determination, but they are substantial. Defendant's refusal to contribute as it is bound means irreparable harm and injury to the Pension Fund – an obligation to make benefit payments to employees without necessary contributions from Defendant to cover those benefits. Therefore, Defendant should be required to submit timely current contributions and remittance reports in the future.

13. I have executed this Declaration in support of Plaintiff's Motion for Default Judgment against Defendant and request that this Court consider the same as proof in support of the allegations contained in the Plaintiff's Complaint and other facts stated in this Declaration.

Pursuant to 28 U.S.C. §1746, I declare under Penalty of perjury that the foregoing is true and correct.

Executed on: 10/18/06

_____
THOMAS MONTEMORE